# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

TREVOR MITCHELL,  )
                  )
    Petitioner,   )
                  )
v.                )   Case No. CIV 06-503-RAW-KEW
                  )
JUSTIN JONES, DOC Director,  )
                  )
    Respondent.   )

## OPINION AND ORDER

This action is before the court on the respondent's motion to dismiss petitioner's petition for a writ of habeas corpus as time barred by the statute of limitations. Petitioner, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Davis Correctional Facility in Holdenville, Oklahoma, attacks his conviction in Latimer County District Court Case Number CF-97-53 for Burglary in the First Degree (Count 1), Assault and Battery with a Dangerous Weapon (Count 2), Shooting with Intent to Kill (Count 3), and Conspiracy to Commit a Felony (Count 4). He raises one ground for relief:

> The state appellate court's rejection of the Petitioner's claim that he was deprived of a fundamentally fair trial as a result of the prosecution's failure to provide a videotaped interview of co-defendant James Strickland by law enforcement is contrary to and constitutes an unreasonable application to the facts in the Petitioner's case of clearly established standards set forth by the United States Supreme Court in *Brady v. Maryland*. Additionally, the state appellate court's rejection of the Petitioner's claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

[Docket #2 at 6].

Petitioner's co-defendant James Strickland allegedly was the only prosecution witness who could implicate petitioner in the shooting. Petitioner claims Strickland's videotaped

statement contains two critical pieces of evidence that could have been used to impeach Strickland at trial:

> (1) James Strickland told law enforcement that he did not hear any other gunshots after he fled the residence, contrary to his testimony at trial, and
>
> (2) James Strickland never told law enforcement that he heard petitioner say, "If you come out, I will shoot or kill you," contrary to his testimony at trial.

[Docket #2 at 6]. In addition, the law enforcement agents who interviewed Strickland on the videotape all stated that Strickland was lying to them, and he previously had lied to them. [Docket #2 at 6-7]. Petitioner argues that if he had received the videotape prior to trial, it could have used it to impeach Strickland's trial testimony.

The respondent alleges the petition was filed beyond the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2244(d) (AEDPA). The following dates are pertinent to the motion to dismiss:

| | |
|---|---|
| 12/18/2000 | Petitioner's direct appeal was affirmed by the Oklahoma Court of Criminal Appeals in *Mitchell v. State*, F-99-1272 (Okla. Crim. App. Dec. 18, 2000). |
| 03/18/2001 | Petitioner's conviction became final upon expiration of the ninety-day period for a certiorari appeal to the United States Supreme Court. |
| 09/17/2004 | Petitioner received the evidence at issue in this habeas petition. |
| 07/19/2005 | Petitioner filed an application for post-conviction relief in the Latimer County District Court. |
| 02/15/2006 | The state district court denied petitioner's application for post-conviction relief. |
| 09/21/2006 | The denial of petitioner's application for post-conviction relief was affirmed in *Mitchell v. State*, No. PC-2006-270 (Okla. |

2

Crim. App. Sept. 21, 2006).

11/20/2006  Petitioner filed this petition for a writ of habeas corpus.

Section 2244(d) provides that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Applying the statute to petitioner's case, his conviction became final March 18, 2001, and he had one year, until March 18, 2002, to initiate a federal habeas corpus action. This petition, however, was filed on November 20, 2006, more than four years after the limitation period had expired. Citing *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003), the respondent alleges that because petitioner did not initiate his post-conviction action until July 19, 2005, after expiration of the limitation period, there is no statutory tolling for the post-

conviction proceedings.

Petitioner maintains his petition is timely, pursuant to § 2254(d)(1)(D) or § 2244(d)(1)(B), because he was not provided with favorable and material evidence until September 17, 2004. He argues his limitation period ran from September 17, 2004, when the videotape was provided, to September 17, 2005. With the tolling of 430 days for his post-conviction proceedings, pursuant to 28 U.S.C. § 2244(d)(2), he claims his petition is not barred by the statute of limitations.

Petitioner alleges the critical question at trial was who actually fired the shots as alleged in the charge of Shooting with Intent to Kill, and the jury had to choose whether to believe him or his co-defendant James Strickland. The record shows that petitioner first raised the issue of the videotaped interview in his post-conviction application, and he claims in this habeas petition that the videotaped evidence was withheld by the State and not discovered until September 17, 2004, nearly four years after adjudication of his direct appeal. [Docket #2 at 11].

In its Order Affirming the Denial of Post-Conviction Relief, the Oklahoma Court of Criminal Appeals discussed petitioner's claim as follows:

> At trial, after Petitioner's attorney had elicited testimony from Strickland on cross-examination that he had a deal with the State to testify against Petitioner, the State asked Strickland on re-direct if it was true he was required to pass a polygraph examination as part of the plea agreement. The trial court overruled Petitioner's objection and directed the jury to disregard the question.
>
> Petitioner argues that despite the court's ruling, the question left the jury with the unmistakable impression Strickland had indeed passed the polygraph examination, or he would not have received the plea agreement. Petitioner argues this question, combined with the State's other violations of *Brady*, deprived him of a fair trial. . . .

4

At the evidentiary hearing and on appeal, Petitioner argues that once the State gave the implication to the jury that Strickland had passed the polygraph, he should have had the right to present evidence Strickland had actually failed the examination, which would have included the videotape of Strickland's polygraph examination and his interview with law enforcement officers after the examination. . . .

Regarding the videotape of Strickland's polygraph examination and subsequent interview, the District Court agreed Petitioner had not seen the videotape prior to trial. The court also found the State had not deliberately concealed or withheld the videotape from Petitioner. Nevertheless, the District Court determined that polygraph results are viewed as unreliable by courts and are inadmissible for any purpose which includes proving the reliability of a witness; therefore, any possible harm caused by the Prosecutor's question has not been enhanced merely because Petitioner has new information which lowers his confidence in the polygraph results. Thus, the District Court found that any admissible exculpatory or impeachment evidence obtained through the videotape would not have changed the outcome of the proceeding with a reasonable probability.

Finally, the District Court found the State presented evidence in addition to Strickland's testimony, including very persuasive forensic evidence, placing Petitioner at the scene of the crimes, at the time the crimes were committed. Where there was overwhelming evidence Petitioner and Strickland had each participated in the crimes, the court admitted there was less certainty as to which individual had actually fired the shot, which formed the basis for the charge of Shooting with Intent to Kill. Nevertheless, the court concluded the jury was presented with ample evidence to find Petitioner guilty of the crimes, and even if Petitioner had been provided with the videotape of Strickland's polygraph examination and interview, there was not a reasonable probability the outcome of the trial would have changed. . . .

After a thorough review of the record, we find such videotape could have been discovered prior to trial with due diligence. Petitioner knew of Chuck Jeffries [the OSBI polygraph examiner] and knew Strickland had been given a polygraph examination. However, trial counsel chose not to interview Jeffries or Strickland. Further, we find the letter from the District Attorney [explaining the items constituting the State's disclosure in the case] indicated Strickland's interview might have been tape recorded, because it stated "no other interviews . . . were tape recorded."

5

*Mitchell v. State*, No. PC-2006-270, slip op. at 2-7 (Okla. Crim. App. Sept. 21, 2006) (footnotes omitted).

Petitioner erroneously asserts the OCCA's post-conviction opinion referenced only Strickland's polygraph and made no factual determinations with respect to the videotape of Strickland's follow-up interview. The Court of Criminal Appeals expressly addressed the post-polygraph interview and the officers' comments that Strickland was not being truthful. *Mitchell*, No. PC-2006-270, slip op. at 4-6 n.5 & n.6. The OCCA restated the trial court's finding that the post-polygraph interview "contained what could be characterized as inconsistent statements made by Strickland, which could have been used to impeach Strickland's testimony at trial." *Id.*, slip op. at 5-6, n.6. Nonetheless, the OCCA found that had petitioner received the videotape before trial, the outcome of the trial was not likely to have changed because of the strength of the other evidence. *Id.* at 5.

Petitioner alleges that prior to trial, the defense made timely and specific requests for any written or recorded statements made by any co-defendant. [Docket #8, Exhibit #11]. The videotape, however, was not discovered until petitioner's post-conviction counsel reviewed the prosecutor's file on petitioner's case [Docket #8, Exhibit 12 at 7-8]. The file led counsel to contact Chuck Jeffries, the polygraph examiner, who found the videotape and sent it to counsel [Docket #8, Exhibit 12 at 8-9]. The prosecutor was unaware of the existence of the videotape until Mr. Jeffries produced it [Docket #8, Exhibit 12 at 108].

At petitioner's post-conviction evidentiary hearing, the prosecution conceded the exculpatory and impeachment value of the withheld videotape and that the prosecution was obligated under the Oklahoma Discovery Code to produce the videotape interview during discovery [Docket #8, Exhibit 12 at 108-110]. The prosecutor also admitted that Strickland

6

made statements in the videotaped interview that were inconsistent with his trial testimony, in particular who fired the shots and whether petitioner harbored any intent to kill [Docket #8, Exhibit 12 at 117].

After careful review of the record, the court finds the OCCA was incorrect in placing the burden of discovery of the videotape on petitioner, instead of the prosecution. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." Further, the prosecutor has a duty to learn of any favorable and material evidence known to the other acting on the government's behalf in a case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). Petitioner, therefore, could not have discovered the factual predicate of his claim through the exercise of due diligence prior to September 17, 2004, and his petition for a writ of habeas corpus was timely filed, pursuant to 28 U.S.C. § 2244(d)(1)(D).

**ACCORDINGLY,** the respondent's motion to dismiss time barred petition [Docket #12] is DENIED. The respondent is directed to show cause why the writ should not issue by filing an answer to the petition within thirty (30) days.

**IT IS SO ORDERED** this 20th day of February 2008.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE